806 P.2d 433

**EDDINS CONSTRUCTION, INC., and Lee Eddins, Plaintiffs–Respondents–Cross Appellants,**

v.

**Larry BERNARD and Geraldine Bernard, husband and wife, and Shane Bernard, and Seubert Excavators, Inc., Defendants,**

**and**

**Larry Bernard, Defendant–Appellant,**

**and**

**Seubert Excavators, Inc., Defendant–Appellant–Cross Respondent.**

**No. 17050.**

Supreme Court of Idaho, Lewiston, October 1990 Term.

Feb. 20, 1991.

Clark & Feeney, Lewiston, for appellants. Ronald T. Blewett, argued.

Strom & Longeteig, Craigmont, for respondents. Wilfrid W. Longeteig, argued.

JOHNSON, Justice.

This is a construction contract case in which a dispute over payment arose between the prime contractor and others who performed work on the project. The primary issues presented and our decisions are:

1. Did the trial court properly submit the issue of punitive damages to the jury?

   We conclude that the trial court should not have submitted the issue of punitive damages to the jury, because there was not substantial evidence to support a jury award of punitive damages.

2. Was it prejudicial for the trial court to admit evidence of the wealth of the party against whom the jury awarded punitive damages and of the litigation expenses of the party in whose favor the jury awarded punitive damages?

   We conclude that the admission of this evidence was not prejudicial because contract damages, not general damages, were awarded by the jury.

3. Was there sufficient evidence of consideration for a modification of the subcontract?

   We conclude that there was sufficient evidence.

4. Were the jury's answers to the questions posed in the special verdict consistent?

We conclude that the answers were consistent.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

The Department of Lands of the State of Idaho (DOL) entered into a contract with Seubert Excavators, Inc. (Seubert) for the construction of a road. The contract prohibited any subcontracting without prior written approval by DOL. Seubert did not seek nor obtain written approval from DOL to subcontract any portion of the work. Seubert represented to DOL that all workers at the construction site were employees of Seubert.

Seubert and Larry Bernard agreed that Bernard would perform all of the physical construction work on the project. Bernard agreed with Lee Eddins (Eddins), president and owner of Eddins Construction, Inc. (ECI), that Eddins and ECI would perform the excavation and clearing work on the project, based on an estimate of the amount of excavation and the requirements for clearing.

Eddins discovered soon after commencing the excavation work that the amount of soil to be excavated was significantly more than the amount contemplated by the estimate. Eddins also learned that the clearing requirements of the job were significantly different than he had understood. Eddins stopped work until he allegedly obtained an oral promise from Bernard for an upward adjustment in the amount to be paid for the excavation and clearing. Bernard later denied that a modification of his agreement with Eddins occurred.

During the work on the project, Eddins severed a power line which in turn caused a fire. The repair costs and the fire suppression costs were deducted from Eddins' compensation.

ECI and Eddins filed an action for breach of contract against Bernard and Seubert. ECI and Eddins also sought punitive damages against Seubert. Eddins claimed he and Bernard were employees of Seubert.

During the trial, the trial court admitted evidence offered by ECI and Eddins, over the objection of Seubert, that Seubert's net worth was in excess of $1,000,000.00, that Eddins had spent approximately twenty-three days pursuing this suit at a rate of approximately $15.00 per hour, and that Eddins had incurred in excess of $6,000.00 in attorney fees in connection with the suit. This evidence was admitted for the limited purpose of the punitive damage claim by ECI and Eddins.

In a special verdict, the jury determined:

1. Eddins was an employee of Seubert, but Seubert did not owe Eddins anything on his claim as an employee.

2. Seubert and Bernard were liable to ECI for $13,515.00.

3. Seubert was liable to Eddins and ECI for $6,000.00 in punitive damages.

Seubert and Bernard moved for a judgment n.o.v. pursuant to I.R.C.P. 50(b) or for a new trial pursuant to I.R.C.P. 59(a)(1), (5), (6), and (7). The trial court denied all of these motions, except the motion pursuant to I.R.C.P. 59(a)(6) which it related to the award of punitive damages. As to this motion, the trial court ordered a remittitur in the full amount of the punitive damages, without granting a new trial in the alternative.

Seubert and Bernard appealed the judgment and the denial of their post-trial motions. ECI and Eddins appealed the remittitur of the punitive damages.

## II.

### THE TRIAL COURT SHOULD NOT HAVE SUBMITTED THE ISSUE OF PUNITIVE DAMAGES TO THE JURY.

■ Seubert and Bernard assert that the trial court should not have submitted the issue of punitive damages to the jury. We agree.

Recently, we have ruled that in deciding whether a trial court abused its discretion

in allowing a jury to consider an award of punitive damages, we will determine whether the record contains substantial evidence to support a finding of the circumstances described in *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). *Garnett v. Transamerica Ins. Serv.*, 118 Idaho 769, 800 P.2d 656 (1990). In *Cheney,* this Court said:

> An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed "malice, oppression, fraud or gross negligence;" "malice, oppression, wantonness;" or simply "deliberate or willful."

104 Idaho at 905, 665 P.2d at 669 (citations omitted).

ECI and Eddins contend that the following evidence supports the trial court's submission of the issue of punitive damages to the jury:

1. Seubert set up Bernard with apparent authority as an agent and then persisted in denying Bernard's authority to modify the contract, thus misleading Eddins into returning to the job upon the promise of additional compensation.

2. Representations were made by an agent of Seubert to DOL that Eddins and all others on the job were employees of Seubert. This was followed by persistent denial of these representations, after it became apparent that Seubert might owe less money to a subcontractor than to an employee because of back charges that could be made against a subcontractor.

3. The representations made by Seubert to DOL about the employment status of those working on the job were made for the deliberate purpose of avoiding the necessity of showing to DOL that Bernard and Eddins did not possess public works contractor licenses.

4. An agent of Seubert signed an affidavit that was submitted to DOL stating that all job-related expenses were paid. In fact, the agent was fully aware that with respect to Eddins a question existed.

5. Seubert's agent deliberately withheld for a period of two to three weeks money admittedly owed by Seubert to Eddins on an entirely unrelated and uncontested matter, in an attempt to use unjustified economic oppression against Eddins.

6. Seubert's agents perjured themselves through their representations described in paragraphs 2 and 4 above.

7. An agent of Seubert testified that in the construction industry it was common practice to ignore the Public Works Contractors Act and Workers' Compensation Act to gain economic advantage and additional profit.

Seubert disputes the characterization of some of this evidence by ECI and Eddins. However, even accepting the characterization of ECI and Eddins, the evidence does not provide substantial evidence to support a finding by the jury of the extreme deviation from reasonable standards of conduct required by *Cheney.*

We note first that there is no expert testimony here, as there was in *Garnett* and in *Sliman v. Aluminum Co. of America,* 112 Idaho 277, 731 P.2d 1267 (1986), of an extreme deviation from reasonable standards of conduct. While expert testimony of extreme deviation is not necessary to establish a jury question on the issue of punitive damages, it does provide some of the substantial evidence that would support submitting the issue of punitive damages to the jury.

In deciding to instruct the jury on the question of punitive damages, the trial court noted that the question was very close. In ruling on the post-trial motions, the trial court stated: "Although there was some testimony to the contrary, the great

weight of the evidence supports a finding that [Seubert's] conduct resulted from a legitimate business dispute; and that such conduct was neither unreasonable nor extreme."

In terms of the extreme deviation from reasonable standards of conduct required by *Cheney*, the evidence on which ECI and Eddins rely is not substantial. Seubert's denial of Bernard's authority to modify the agreement with Eddins is not evidence of an extreme deviation from a reasonable standard of conduct evidencing a harmful state of mind toward ECI and Eddins. It merely indicates that Seubert contested Bernard's authority. Whether Seubert was correct or not in taking this position is a matter of legal interpretation. Even if Seubert were legally wrong, this denial is not substantial evidence justifying submission of the issue of punitive damages to the jury.

Seubert's representations to DOL that Eddins was an employee of Seubert does not indicate any harmful state of mind by Seubert toward ECI or Eddins. It may indicate inappropriate conduct toward DOL, but not toward ECI or Eddins. Likewise, the affidavit submitted to DOL by Seubert's agent does not indicate any harmful state of mind toward ECI or Eddins. Whatever liability Seubert had to ECI and Eddins for work performed on the project was not affected by this affidavit.

We reach the same conclusion with regard to the testimony concerning common practices in the construction industry. Seubert's practices concerning the style of operating on public works projects may not have been correct, but these practices do not indicate a harmful state of mind toward ECI and Eddins.

The evidence that Seubert deliberately withheld money owed to Eddins for two or three weeks after this action was filed, allegedly in order to oppress Eddins economically, presents a closer case. It might be considered similar to the failure of the insurer in *Garnett* to pay the full cost of the reconstruction of the insured building following a fire, despite the repeated efforts of the insureds and their attorney. However, the withholding of money owed to Eddins was of a different character. In *Garnett*, there was evidence that the action of the insurer was a continuing course of conduct that caused substantial loss to the insured. Here, the failure to pay was for a short time, and Eddins did not present any evidence of damage or loss occasioned by the delay in payment. Under these circumstances, the withholding of the money was not substantial evidence of an extreme deviation from reasonable standards of conduct or that Seubert understood or disregarded the likely consequences of its actions.

III.

## EVIDENCE OF WEALTH WAS NOT PREJUDICIAL.

■ Seubert asserts that the admission of evidence of Seubert's wealth was prejudicial. We disagree.

Although we have ruled that the issue of punitive damages should not have been submitted to the jury, the admission of evidence of Seubert's financial condition was not prejudicial. The only damages awarded by the jury besides the punitive damages were damages for breach of contract. The award appears to have been made based on a calculation of the amount that remained owing after appropriate credits were made. No general damages were involved. Therefore, we conclude that the admission of the evidence of Seubert's wealth was not prejudicial.

IV.

## CONSIDERATION FOR MODIFICATION OF THE SUBCONTRACT.

■ Seubert and Bernard assert that there was insufficient evidence of consideration for a modification of the subcontract with ECI. We disagree.

Seubert and Bernard argue that following the alleged modification of the subcontract, ECI merely did what it was legally bound to do under the original agreement. In support of this position, they cite *Dashnea v. Panhandle Lumber Co.*, 57 Idaho

232, 64 P.2d 390 (1937) (" 'It is elementary that a promise to do, or the doing of, what one is already bound by contract to do, is not valid consideration.' ").

Here, the original contract was based on a certain amount of excavation and certain requirements for clearing. The modified contract required significantly greater amounts of excavation and significantly different requirements for clearing. ECI agreed in the modified agreement to do more work than it was required to do by the terms of the original agreement. The additional agreements and performance provided the necessary consideration for the modification of the subcontract.

## V.

## THE ANSWERS TO THE QUESTIONS IN THE SPECIAL VERDICT WERE CONSISTENT.

■ Seubert and Bernard assert that the answers of the jury to the questions posed in the special verdict were inconsistent. Specifically, they contend that it was inconsistent for the jury to find that Eddins was an employee of Seubert, but that Seubert and Bernard were liable to ECI for damages based on a subcontract. We disagree.

The jury's answers to the questions in the special verdict are consistent, if the answers are read in light of the claims that Eddins had against Seubert and that ECI had against Seubert and Bernard. Eddins claimed to be an employee of Seubert. The jury found that he was. Eddins claimed that he was entitled to unpaid wages from Seubert. The jury found that he was not.

ECI claimed that Seubert and Bernard were liable to ECI for equipment rental. In final argument, counsel for ECI argued that the amount due for equipment rental was $13,514.38. The jury awarded ECI $13.515.00. This award was obviously intended by the jury to compensate ECI for equipment rental, not for Eddins' personal services. Therefore, we see no inconsistency in the jury's answers. The jury simply construed the arrangement to include (1) employment of Eddins by Seubert for personal services and (2) a subcontract between Seubert and Bernard with ECI for equipment rental.

## VI.

## CONCLUSION.

We affirm the award of $13,515.00 to ECI. Because we have ruled that the issue of punitive damages should not have been submitted to the jury, we find it unnecessary to rule on the appeal of ECI and Eddins as to the remittitur of the punitive damages.

Because of the mixed result on appeal, we award no costs or attorney fees.

BISTLINE, BOYLE and McDEVITT, JJ., concur.

BAKES, C.J., concurs in the result.