John DOE, Plaintiff,

v.

CUTTER BIOLOGICAL, A DIVISION OF MILES INC.; Miles Laboratories, Inc.; and Armour Pharmaceutical Corporation, Defendants.

Civ. No. 92–0434–S–HLR.

United States District Court, D. Idaho.

Feb. 24, 1994.

Robert Huntley and Stephanie Westermeier, Givens Pursley Webb & Huntley, Boise, ID, Charles R. Kozak, Kaneohe, HI, for plaintiff.

Richard E. Hall and John J. Burke, Hall Farley Oberrecht & Blanton, Boise, ID, Dexter Louis and Duncan Barr, O'Connor Cohn Dillon & Barr, San Francisco, CA, for defendants Cutter Biological, Miles Inc., Miles Laboratories, Inc.

Stephen R. Thomas, Moffatt Thomas Barrett Rock & Fields, Boise, ID, Douglas F. Fuson and Sara J. Gourley, Sidley & Austin, Chicago, IL, for defendant Armour Pharmaceutical Corp.

## AMENDED ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTIONS TO AMEND

RYAN, Senior District Judge.

### I. FACTS AND PROCEDURE

Plaintiff John Doe is a hemophiliac. Because of his condition, John Doe received a clotting agent known as Factor VIII which facilitates the clotting of blood in hemophiliacs.

In December of 1991, John Doe tested positive for the HIV virus. On October 30, 1992, John Doe commenced this federal action naming those providers of the Factor VIII products which were administered to him by the Pocatello Regional Medical Center between 1979 and 1985.[1] Originally, the named defendants included: Cutter Biological, a division of Miles Inc.; Miles Laboratories, Inc.; Armour Pharmaceutical Corporation (Armour); and Alpha Therapeutic Corporation. At this juncture, however, Alpha Therapeutic Corporation has been dismissed with prejudice,[2] and therefore, Miles Inc.,[3] and Armour represent the two remaining defendants.

The following motions are currently pending before the court: (1) [Plaintiff's] Motion for Partial Summary Judgment and Motion in Limine, filed August 3, 1993; (2) Defendant Miles' Motion for Summary Judgment, filed October 15, 1993; (3) Armour's Motion for Summary Judgment, filed October 15, 1993; (4) plaintiff's Motion to File Second Amended Complaint and Demand for Jury Trial, filed October 1, 1993; and (5) [Plaintiff's] Motion in Limine for Ruling Regarding Pleading of Strict Liability or Motion for Leave to Amend Complaint, filed November 15, 1993.

On February 17, 1994, a hearing on all pending motions was conducted by the court. At the beginning of the hearing, the court advised counsel that, based on the dictates of the United States Supreme Court, the Ninth Circuit Court of Appeals, and Idaho Appellate Rule 12.1, an Order of Certification, setting forth questions regarding the issue of causation as well as the interpretation of Idaho's blood shield statute, would be sent to the Idaho Supreme Court. *See* Ord. of Certification, filed Feb. 17, 1994. The court

1. Subsequently, on November 20, 1992, an Amended Complaint and Demand for Trial by Jury was filed.

2. *But see* Am.Ord. to Dismiss Alpha Therapeutic Corp. with Prejudice, filed Dec. 23, 1993, Ex. A (Stip. for Dismissal with Prejudice) ¶ 3 at 2.

3. It has been represented that: "This Defendant's only correct corporate name is 'Miles Inc.' MILES LABORATORIES, INC. no longer exists.

'CUTTER BIOLOGICAL' is no longer a separate 'division' of Miles Inc. Rather, the term 'Cutter' is now only a 'brand name' applied to certain of Miles' pharmaceutical preparations." Miles' Mem. in Opp'n to Pl.'s Mot. for Partial Summ.J. & Mot. In Limine, filed Oct. 15, 1993, at 2 n. 1. Thus, when referring to Miles Inc., Miles Laboratories, Inc., or Cutter Biological, a division of Miles Inc., the court will refer solely to Miles Inc. (Miles).

advised further that, pending such certification, [Plaintiff's] Motion for Partial Summary Judgment and Motion in Limine; Defendants' motions for summary judgment on the issue of causation; and [Plaintiff's] Motion in Limine for Ruling Regarding Pleading of Strict Liability or Motion for Leave to Amend Complaint would each be denied without prejudice.

Based on the foregoing,[4] together with an Order on Certain Non–Dispositive Motions filed February 11, 1994, the court requested counsel to limit their oral arguments to the two remaining matters requiring resolution: (1) defendants' motions for summary judgment based on the statute of limitations; and (2) plaintiff's Motion to File Second Amended Complaint and Demand for Jury Trial to add a claim for punitive damages.

Now, having fully considered the record herein, as well as the oral arguments of counsel, and for the reasons contained in the analysis set forth below, defendants' motions for summary judgment based on the statute of limitations shall be denied; and plaintiff's Motion to File Second Amended Complaint and Demand for Jury Trial to add a claim for punitive damages shall be granted.

## II. ANALYSIS OF MOTIONS ARGUED AT FEBRUARY 17, 1994, HEARING

### A. Defendants' Motions for Summary Judgment Re: Statute of Limitations

#### 1. Positions taken by the parties.

Both Miles and Armour filed motions for summary judgment based on the two-year statute of limitations set forth in Idaho Code § 5–219(4). In particular, Miles moved for summary judgment "on the grounds that plaintiff's injury was objectively ascertainable in 1985 and his action is, therefore, barred by the applicable statute of limitations." Mem. of Points & Authorities in Supp. of Miles' Mot. for Summ.J., filed Oct. 15, 1993, at 2. And, Armour moved for summary judgment on the grounds that:

4. In addition, at the time of the hearing, the court advised counsel that it would grant defendants' motions for summary judgment regarding

1. The statute of limitations starts with the onset of "objectively ascertainable" injury.

2. The "objective medical proof" in the instant case shows that plaintiff[ ] did not file [his] action within two years of the time damages were "objectively ascertainable."

3. The damage to plaintiff[ ] was "objectively ascertainable" if [John Doe would have been] tested for HIV as recommended by the physicians and nurses treating him.

Armour's Mem.Supp. of Mot. for Summ.J., filed Oct. 15, 1993, Contents at 2.

More specifically, defendants rely upon the following facts in support of their positions.

Miles notes that John Doe "experienced symptoms consistent with HIV infection in 1981, 1983, and 1985." Mem. of Points & Authorities in Supp. of Miles' Mot. for Summ.J., filed Oct. 15, 1993, at 7. Miles provides the following chronology in support of the statute of limitations argument.

—In June of 1981, John Doe experienced "weakness of undiagnosed origin" and "was also found to be positive on a 'mono spot' test, a test for mononucleosis." Id. at 8.

—In May 1983, John Doe suffered from a "two-week history of swollen glands, including axillary nodes (lymph nodes in the arm pits), as well as inguinal nodes (lymph nodes in the groin)." Id.

—In August 1983, John Doe's medical records reflect that Dr. Brydon discussed AIDS with him. Id.

—In January 1985, John Doe suffered from herpes zoster, also known as "shingles." Id.

—In July 1985, Dr. Mickelson treated John Doe for orthopedic problems and discussed AIDS with John Doe and his mother. Id.

—In 1985, Dr. Boe urged John Doe's mother to have her son tested for HIV infection. Id.

dismissal of John Doe's parents. See Ord. Dismissing Frank & Jane Doe, filed February 24, 1994.

—In 1988, Robina Ingram, a nurse from the Oregon Health Sciences University Hemophilia Outreach Program, met with John Doe's mother and urged her to have him tested for AIDS. *Id.* at 16.

—In 1991, John Doe tested positive for HIV infection. *Id.* at 8.

Miles points out that heat-treated factor concentrate is believed to inactivate HIV and no infection with heat-treated factor concentrate has been established. *Id.* at 14. Plaintiff's treating physician, Dr. Roger Boe, estimates that because plaintiff was using non-heat-treated Factor VIII products until 1984, "there was a 70–80% chance that John Doe was infected with HIV prior to August 1984." *Id.* at 14.

Ultimately, Miles concludes its opening brief by stating:

> Plaintiff, in all likelihood, became infected with HIV prior to August 1984. Laboratory tests available in 1985 would have detected that infection. Plaintiff was urged in 1985 and 1988 to be tested for infection with HIV and was warned that he was likely infected with HIV during those years as well. Plaintiff's infection was "objectively ascertainable" as early as 1985 and his cause of action is, therefore, barred by the statute of limitations.

*Id.* at 19.[5] According to Miles, at the very latest, John Doe should have filed his complaint by April 1988—which would have been two years after he turned 18. *Id.* at 16 n. 15.

In support of its motion, Armour chronicles essentially the same facts as Miles. Armour contends that John Doe's cause of action accrued "far before October 31, 1990," and therefore, the action filed on October 30, 1992, is barred by the statute of limitations. Armour's Mem.Supp. of Mot. for Summ.J., filed Oct. 15, 1993, at 3. In particular, Armour asserts that "[t]he statute of limitations should . . . begin to run as of January 1985, when John Doe was presented with herpes zoster," because "signs of immune compromise were 'objectively ascertainable' and demonstrate the existence of 'some damage' to John Doe's immune system." *Id.* at 7. Ultimately, Armour concludes by stating that:

> Given the virtual hailstorm of facts and warnings indicating that John Doe was at risk of HIV infection or was in fact HIV positive, [John Doe] should not be allowed to undermine the clear policy of the Idaho statute of limitations by failing to undertake reasonable steps to confirm that [he] was infected. John Doe was suffering from advanced AIDS in December of 1991 and, therefore, was infected many years prior to that date. In addition, his HIV infection was "objectively ascertainable" by the use of a simple HIV blood test, a full five years prior to October 30, 1990—a test that had been repeatedly recommended by his health care providers. John Doe indisputably had suffered "some damage" prior to October 30, 1990 and his claims are time barred.

*Id.* at 13.[6]

In opposition to defendants' motions, plaintiff maintains that, as a matter of law, his injury was not "objectively ascertainable" until December of 1991, when he tested positive for AIDS. Alternatively, plaintiff argues that there are questions of fact which preclude the court from granting summary judgment on the statute of limitations issue.

John Doe's position is summarized as follows:

> [1] The Statute of Limitations in Idaho Code Section 5–219(4) Did Not Begin to Run Until There was Objective Medical Proof of an Actual Injury to [John Doe]

> [2] Defendants' Motions for Summary Judgment Fail Because Defendants Cannot Present Uncontroverted Evidence That There was Objective Medical Proof of Sufficient Injury Until December 1991 [when John Doe tested positive for HIV]

---

5. In relation to Miles' motion, the court fully reviewed the Affidavit of John J. Burke, with accompanying exhibits, filed October 15, 1993; and the Affidavit of Theodore A. Walters, M.D., filed October 15, 1993.

6. In relation to Armour's motion, the court fully reviewed an Affidavit of Stephen R. Thomas, with accompanying exhibits, filed Oct. 15, 1993.

[3] Defendants are Estopped From Asserting a Statute of Limitations Defense Because They Concealed From the Plaintiff[ ] the Grave Risk and Fact That the Factor VIII [John Doe] Used was Contaminated With HIV.

[Pl.'s] Mem.Opp'n to Defs.' Mots. for Summ. J., filed Nov. 8, 1993, at 2, 5, and 24.

In support of his position, John Doe submitted the following items: (1) [Plaintiff's] Memorandum in Opposition to Defendants [Miles'] and Armour's Motions for Summary Judgment, with accompanying exhibits; (2) Affidavit of Stephanie C. Westermeier in Support of Memorandum in Opposition to Motions for Summary Judgment, with accompanying exhibits; (3) Statement of disputed facts and issues, with accompanying exhibits; (4) Second Affidavit of Andrew Pavia, M.D.; (5) Affidavit of John Doe; (6) Affidavit of Frank Doe; (7) Affidavit of Jane Doe; and (8) Second Affidavit of Jane Doe.

John Doe insists that his medical records do not supply uncontroverted evidence equivalent to "objective medical proof" that he suffered from being HIV positive. On the contrary, John Doe maintains that his medical records from June of 1981, May of 1983, August of 1983, January of 1985, and July of 1985, provided no *proof* that he had contracted the HIV virus. [Pl.'s] Mem.Opp'n to Defs.' Mots. for Summ.J., filed Nov. 8, 1993, at 6–10. John Doe argues further that, "the mere fact that a test for HIV existed in 1985 did not provide objective medical proof that he was infected with HIV or AIDS...." *Id.* at 10. Furthermore, even if health care providers discussed the existence of AIDS during the course of treating John Doe, no one ever suggested that John Doe might have AIDS, nor did any of his doctors ever *order* an AIDS test for John Doe. *Id.* at 10–19.

In an affidavit, plaintiff states:

At no time prior to the time I was hospitalized with pneumocystis carinii pneumonia in December 1991 was I ever warned or informed that there was a risk of HIV infection or contraction of AIDS by the use of the Defendants' Factor VIII products.

All of the information I received through any form regarding the Factor VIII products was that the products were safe.

I was never informed by the Defendants or anyone else that the Defendants recalled or withdrew product which had reached Pocatello, Idaho and which I had taken.

I was never informed by the Defendants or anyone else prior to my hospitalization and diagnosis[ ] with AIDS in December 1991 that the vast majority of hemophiliacs were exposed to dangerous, HIV-tainted products in the 1980s, or that these hemophiliacs were HIV positive or had AIDS.

Had I been informed of this information, I would have had an HIV test and if that test had been positive, I would have brought suit against Defendants at that time.

Affidavit of [John Doe], filed Nov. 8, 1993, ¶¶ 2–6 at 2.

As an additional response to Miles' and Armour's motions for summary judgment, plaintiff argues that defendants should be estopped from asserting a statute of limitations defense because they "fraudulently concealed the fact that [John Doe] and other hemophiliacs had an actionable injury," and because they concealed "the grave danger of their product and the fact that [John Doe] was likely HIV-infected through its use." *Id.* at 24, 26.

2. *Application of Idaho Code § 5–219(4).*

■ In pertinent part, Idaho Code § 5–219(4) provides:

Within two (2) years ... [a]n action to recover damages ... for an injury to the person ... shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer....

Idaho Code § 5–219(4) (1990).

On its face, the wording of Idaho's statute would appear to bar John Doe from pursuing

a cause of action against the named defendants if he did not commence his personal injury action within two years from the time he received the Factor VIII contaminated with the HIV virus. However, even defendants concede that, before an action accrues and the limitations period begins to run, Idaho courts have interpreted the statute to require proof of "some damage" and/or "objectively ascertainable damage."

As it looks to judicial interpretation of Idaho Code § 5–219(4) and the terms "some damage" and/or "objectively ascertainable damage," the court will focus primarily on the following decisions: *Davis v. Moran,* 112 Idaho 703, 735 P.2d 1014 (1987); *Hawley v. Green,* 117 Idaho 498, 788 P.2d 1321 (1990) (hereinafter *Hawley I* ); *Chicoine v. Bignall,* 122 Idaho 482, 835 P.2d 1293 (1992), and *Hawley v. Green,* 124 Idaho 385, 860 P.2d 1 (Ct.App.1993) (hereinafter *Hawley II* ).

In *Chicoine,* the court included a thorough discussion of the history and application of the "some damage rule" and noted:

> The interpretation of I.C. § 5–219(4) has caused this Court some difficulties over the years. The cases are too numerous to cite. However, we have *never held* that a statute of limitations may run before an aggrieved party suffers damages. The authority to do so is highly doubtful, since it is axiomatic that a party has no right to sue for damages until actual injury occurs.

*Chicoine v. Bignall,* 122 Idaho at 483, 835 P.2d at 1294 (*quoting Corbridge v. Clark Equip. Co.,* 112 Idaho 85, 88–89, 730 P.2d 1005, 1008–09 (1986)).

Acknowledging the unwillingness of Idaho courts to adopt a "discovery rule" in contravention of the state legislature's rejection of such a rule, in *Chicoine* the court also addressed the "objectively ascertainable damage" standard first developed in *Davis v. Moran,* 112 Idaho 703, 735 P.2d 1014 (1987): [7]

> Our prior cases clearly hold that we do not apply a subjective test, based upon when the claimant knew or in the exercise of

reasonable diligence should have known of the damage, because that would amount to a discovery rule which our prior cases have expressly rejected in light of the legislature's explicit rejection of the discovery rule, I.C. § 5–219(4). However, just as in *Streib v. Veigel,* [109 Idaho 174, 706 P.2d 63 (1985) ], where we held that a *flexible reading of I.C. § 5–219(4)* was *necessary to avoid an absurd result* in that case, by the same token in cases involving alleged negligent radiation treatment *a cause of action does not accrue until the fact of injury becomes objectively ascertainable.*

*Chicoine v. Bignall,* 122 Idaho at 486, 835 P.2d at 1297 (*quoting Davis v. Moran,* 112 Idaho at 709, 735 P.2d at 1020) (emphasis added). "In *Davis,* the court noted that '[b]y [objectively ascertainable] we mean that objective medical proof would support the existence of an actual injury.' " *Id.* (*quoting* 112 Idaho at 709 n. 4, 735 P.2d at 1020 n. 4.)

At least with respect to "actions for professional malpractice," in *Chicoine,* the Supreme Court "harmonized" the "some damage" rule and the "objectively ascertainable damage" standard by concluding that such an action "shall be deemed to have accrued for the purposes of I.C. § 5–219(4) only when there is *objective proof* that would support the existence of some actual damage." *Chicoine v. Bignall,* 122 Idaho at 487, 835 P.2d at 1298 (emphasis added).

Another Idaho court decision which provides guidance for this court is *Hawley v. Green,* 117 Idaho 498, 788 P.2d 1321 (1990). In *Hawley I,* the Idaho Supreme Court applied the "objectively ascertainable damage" standard to a medical malpractice case where doctors failed to diagnose a tumor. The issue was whether some damage occurred when the doctors failed to observe the tumor on X-rays, or only later when the patient began experiencing symptoms. As it reversed an order granting summary judgment based on the statute of limitations, *once again,* the Idaho Supreme Court acknowl-

---

7. In *Davis v. Moran,* the court considered the application of Idaho Code § 5–219(4) to injuries resulting from radiation exposure, "which are initiated at one point in time, but by their very nature do not become manifest or fully developed until a later point in time because the destruction of tissue or development of cancer occurs much later." *Chicoine v. Bignall,* 122 Idaho at 486, 835 P.2d at 1297 (*quoting Davis v. Moran,* 112 Idaho at 709, 735 P.2d at 1020).

edged: "As we recognized in *Davis v. Moran*, 'However, where the functional defect (and its symptomology) does not occur at all until a later time, the very nature of a tort action requires us to read this language in I.C. § 5–219(4) *flexibly* to avoid absurd results.'" *Id.* at 502, 788 P.2d at 1325 (*quoting Davis v. Moran*, 112 Idaho at 708, 735 P.2d at 1019) (emphasis added). Furthermore, the court stated:

> The only facts that are established and uncontroverted in this record are that the tumor was evident on the X-rays taken between 1979 and 1983. There is no evidence in the record one way or another concerning whether during 1979–83 the tumor was progressive, malignant, harmful or in any manner dangerous at this point in time.

*Id.* 117 Idaho at 504, 788 P.2d at 1327.

Following *Hawley I,* the case was remanded to the district court, whereupon summary judgment was once again entered in favor of defendants based on the statute of limitations. And, in a second appeal, *Hawley v. Green,* 124 Idaho 385, 860 P.2d 1 (Ct.App. 1993) (hereinafter *Hawley II* ), the district court was once again reversed by the Idaho Court of Appeals. As it reversed the district court for a second time, the Idaho Court of Appeals observed that: "*Hawley I* and cases cited therein make it clear that the statute of limitation does not begin to run until some damage has occurred. We do not think that the Supreme Court intended that the courts should *presume damage." Id.,* 124 Idaho at 391, 860 P.2d at 7. This court agrees.

By looking at the totality of events between 1983 and 1991, Miles and Armour essentially request this court to isolate a point in time prior to October 30, 1990, and "presume damage." Knowing *now* what the medical community does about AIDS, defendants' arguments make such a presumption reasonable. However, nothing in the decisions of Idaho courts require the use of such a *retrospective* approach. It has been said

that "hindsight is 20/20"—under the facts of this case, it is. In December 1991, *once John Doe tested positive for AIDS,* collectively, John Doe's medical records do evidence "some damage," and based on those records, his injury was "objectively ascertainable," [8] that is, "objective medical *proof* " supported the existence of an actual injury.

As defendants emphasize, John Doe experienced illnesses over the years, which collectively, and in retrospect, provide evidence that "some damage" was in the process of occurring. However, as for the chronology of events heavily relied upon by Miles and Armour, no event, on its own, amounted to "objective medical *proof* " that John Doe was infected with the HIV virus, and that he was suffering from a progressive disease. On the contrary, as established in the extensive record before this court, the illnesses suffered by John Doe were commonly experienced by hemophiliacs as well as non-hemophiliacs, and by immunocompromised as well as non-immunocompromised individuals. *See* [Pl.'s] Mem.Opp'n to Defs.' Mots. for Summ.J., filed Nov. 8, 1993, at 7–8. Prior to December 1991, nothing in the record provides "objective medical proof" that John Doe had been infected with the HIV virus.

Moreover, Andrew Pavia, M.D., indicates that: "The *first objective evidence of HIV infection* of which I am aware, and to my knowledge the first evidence known to [John Doe], was in December 1991." Second Pavia Aff., filed Nov. 15, 1993, ¶ 11 at 3 (emphasis added).

This court concludes that "some damage" occurred and John Doe's injury was "objectively ascertainable" when John Doe tested positive for HIV in December 1991. It was not until that time that there was "objective medical proof" to support the existence of plaintiff's injury. Thus, based on *undisputed facts* in the record, this court finds that, as a matter of law, it was not until December 1991 that Idaho's two-year statute of limitations began to run.[9] Based on this finding,

---

8. Under Idaho law, this court finds that the word "ascertained" could arguably be substituted for the word "ascertainable." True, this would approximate adoption of a "discovery rule;" however, based on its "flexible" readings of Idaho

Code § 5–219(4), to date, the Idaho Supreme Court does not appear comfortable with the legislature's rejection of the "discovery rule."

9. In this case, at the same time there was objective medical proof that plaintiff had been infected

the court need not address plaintiff's arguments related to estoppel and/or fraudulent concealment. Plaintiff's action was timely filed, and therefore, the defendants' motions for summary judgment shall be denied.

B. *Plaintiff's Motion to File Second Amended Complaint to Add a Claim for Punitive Damages*

1. *Positions taken by the parties.*

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, plaintiff filed a motion to amend his complaint "to pray for exemplary and punitive damages due to the grossly negligent and extreme and outrageous conduct of the Defendants herein." Mot. to File Second Am.Compl. & Demand for Jury Trial, filed Oct. 1, 1993, at 1–2. Plaintiff argues that he should be permitted to amend his complaint because he "can show a reasonable likelihood of proving facts at trial to support such an award." Mem.Supp. Mot. to File Second Am.Compl. & Demand for Jury Trial, filed Oct. 1, 1993, at 2.

In support of his motion to amend, plaintiff claims that:

[P]roof at trial will demonstrate that the Defendants knew of the risks to the users of their product and could have prevented the infliction of a horrific disease, including on the Plaintiff John Doe, but instead chose to conspire together and delay the implementation of necessary steps to prevent contamination of their product with HIV and other viruses.

*Id.* at 3–4. More specifically, plaintiff contends that "Defendants[ ] Recklessly Failed to Adequately Screen and Test Paid Donors Whose Plasma Was Used in The Factor VIII Blood Product," and that "Defendants ... Recklessly Failed to Purify Their Product Through the use of Available Technology, and Failed to Adequately Warn Product Users of the Danger." *Id.* at 4, 7.

Relying, appropriately, upon Idaho law, defendants submit extensive briefing and ex-

hibits thereto which vehemently oppose plaintiff's motion to amend to add a claim for punitive damages.

2. *Application of Rule 15(a) and Idaho Code § 6–1604(2).*

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." A motion to amend is committed to the sound discretion of the trial court and is reviewed only for an abuse of discretion. *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1472 (9th Cir.1987); *Poling v. Morgan,* 829 F.2d 882, 886 (9th Cir.1987). The factors to be considered in ruling on a motion to amend are undue delay, bad faith or dilatory motive, futility of amendment, and undue prejudice to the opposing party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Poling v. Morgan,* 829 F.2d at 886.

■ Furthermore, because this personal injury action is before the court based on diversity jurisdiction, Idaho Code § 6–1604(2) applies. *See Windsor v. Guarantee Trust Life Ins. Co.,* 684 F.Supp. 630, 633 (D.Idaho 1988) (Idaho Code § 6–1604(2) is substantive in nature and therefore controlling in federal court in a diversity case). Under Section 6–1604(2), a party cannot make a claim for punitive damages in its prayer for relief; rather, the claim must be made by a pretrial motion to amend.

[A] party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages. The court *shall allow* the motion to amend the pleadings if the moving party establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

Idaho Code § 6–1604(2) (1990) (emphasis added).

■ In Idaho, "[i]t is well settled that punitive damages are not favored in the law

---

with the HIV virus, Plaintiff John Doe *discovered* he had been infected with the HIV virus. This coincidence, however, does not mean that the instant decision imposes a "discovery rule" on Idaho law. Rather, based on undisputed facts in

the record, this decision merely follows reasoning of the Idaho Supreme Court regarding the interpretation and application of Idaho Code § 5–219(4).

and should be awarded only in the most unusual and compelling circumstances, and are to be awarded cautiously and within narrow limits." *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992) (citations omitted). Idaho courts have also made clear that: "The decision whether to submit the question of punitive damages to a jury rests within the sound discretion of the trial court." *Id.* (*citing Hoglan v. First Sec. Bank*, 120 Idaho 682, 819 P.2d 100 (1991); *Eddins Constr. v. Bernard*, 119 Idaho 340, 806 P.2d 433 (1991); *Soria v. Sierra Pac. Airlines*, 111 Idaho 594, 726 P.2d 706 (1986)).

An award of punitive damages will be upheld "only when it is shown that the defendant acted in a manner that was 'an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences.'" *Manning v. Twin Falls Clinic & Hospital*, 122 Idaho at 52, 830 P.2d at 1190 (*quoting Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 905, 665 P.2d 661, 669 (1983)). Further, the Supreme Court of Idaho has held that the "justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence'; 'malice, oppression, wantonness'; or simply 'deliberate or willful." *Id.*

In resolving plaintiff's motion to amend, the court has balanced the tension existing between the principles of Rule 15(a) of the Federal Rules of Civil Procedure, i.e., that leave to amend pleadings shall be "freely given," and the limiting provisions of Idaho statutory and case law, which disfavor punitive damages.

The court has *thoroughly* reviewed the extensive record on this issue and has carefully considered the arguments of counsel. Defendants persuasively argue that they should not be subject to a claim for punitive damages because the risks posed to hemophiliacs, like John Doe, were unavoidable—given the medical community's limited knowledge about AIDS. And, based on the law of Idaho on this issue, initially, the court

was not inclined to grant plaintiff's motion. Nevertheless, as the court sorted through the voluminous material submitted by both sides, it found the Affidavit of Andrew Pavia, M.D., and the Affidavit of Donald Pinkston Francis, M.D., to be particularly troubling. *See* Pavia Aff., filed June 18, 1993; and Francis Aff., filed Oct. 25, 1993.

Therefore, with respect to Idaho Code § 6–1604(2), *at least at this juncture*, the court finds that plaintiff has established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages, and therefore, the motion to amend to add a claim for punitive damages will be granted.

The parties are advised, however, that this court sees the threshold for *amending* a complaint to add a claim for punitive damages to be significantly lower than the threshold for *allowing* a punitive damages claim to ultimately reach a jury. At trial, until the court finds that the record is sufficient to allow the jury to consider the issue of punitive damages, the court will exclude evidence about the defendants' wealth and financial condition. Moreover, should the evidence presented at trial fail to establish a sufficient factual basis to support an award of punitive damages, the court will not allow the claim for punitive damages to go to the jury.

### III. ORDER

Based on the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that [Plaintiff's] Motion for Partial Summary Judgment and Motion in Limine, filed August 3, 1993, should be, and is hereby, DENIED WITHOUT PREJUDICE, subject to certification of a question to the Idaho Supreme Court regarding the issue of causation.[10]

IT IS FURTHER ORDERED that Defendant Miles' Motion for Summary Judgment, and Defendant Armour's Motion for Summary Judgment, argued at the hearing held on February 17, 1994, should be, and are hereby DENIED WITHOUT PREJUDICE IN PART and DENIED IN PART, as follows:

1. Defendants' motions for summary judgment on the issue of causation should be,

---

**10.** *See* Ord. of Certification, filed Feb. 17, 1994, at 10.

and are hereby, DENIED WITHOUT PREJUDICE, subject to certification of a question to the Idaho Supreme Court regarding the issue of causation.[11]

2. Defendants' motions for summary judgment based on the statute of limitations should be, and are hereby, DENIED.

IT IS FURTHER ORDERED that plaintiff's Motion to File Second Amended Complaint and Demand for Jury Trial should be, and is hereby, GRANTED; and, pursuant to Idaho Code § 6–1604, plaintiff shall be permitted to assert a claim for punitive damages. The Clerk of Court is hereby directed to FILE the Second Amended Complaint and Demand for Trial attached as Exhibit 1, to the Motion to File Second Amended Complaint and Demand for Jury Trial filed on October 1, 1993.

IT IS FURTHER ORDERED that plaintiff's Motion in Limine for Ruling Regarding Pleading of Strict Liability or Motion for Leave to Amend Complaint, should be, and is hereby, DENIED WITHOUT PREJUDICE, subject to certification of a question to the Idaho Supreme Court regarding the interpretation of Idaho's blood shield statute.[12]